**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EUKA WADLINGTON, # 10296-424,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17-cv-449-SMY** |
| | ) | |
| **T.G. WERLICH,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Euka Wadlington, who is currently incarcerated at FCI-Greenville, Illinois, filed this *pro se* action, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). After initiating the case, Wadlington obtained counsel (Goodman), who supplemented the record and filed an "Amended Petition" which the Court found presented additional arguments and authority in support of the original Petition but did not replace or supersede the original Petition (*See* Docs. 34 and 35). Invoking *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) and *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), Wadlington challenges his career-offender-enhanced sentence imposed in the Southern District of Iowa. The Court conducted a hearing on the record on March 4, 2020.[1] For the reasons discussed below, the Petition for habeas corpus relief shall be granted.

### Relevant Facts and Procedural History

#### Trial Court Proceedings

Following a 1999 jury trial, Wadlington was convicted of two offenses: (Count 1)

---

[1] Wadlington is now represented by the Federal Public Defender after attorney Goodman withdrew.

conspiracy to possess and distribute cocaine and cocaine base (the "conspiracy" count), and (Count 7) attempted distribution of cocaine (the "attempt" count), in violation of 21 U.S.C. §§ 846 and 841(a)(1).[2] *United States v. Wadlington*, Case No. 98-CR-242 (S.D. Iowa); 233 F.3d 1067, 1072 (8th Cir. 2000). Pursuant to 21 U.S.C. § 851, the Government notified Wadlington that his two Illinois state court convictions would increase his federal sentence to mandatory life: (1) Cook County Case No. 88-cr-1839101, for delivery/manufacture of a controlled substance; and (2) Cook County Case No. 90-cr-1154801, for delivery and manufacture[3] of a controlled substance. In the 1988 case, Wadlington was convicted under Illinois Revised Statutes Ch. 56 1/2, ¶ 1401, later codified at 720 ILCS 570/401. (Doc. 15, pp. 2, 10-11; Doc. 15-4, pp. 2, 4-5). The conviction in the 1990 case was pursuant to Illinois Revised Statutes Ch. 56 1/2, ¶ 1402, now found at 720 ILCS 570/402. (Doc. 15-5, pp. 1-2).

Based upon the two prior state convictions, Wadlington was subject to a statutory minimum sentence of life for the conspiracy count and a statutory minimum of 10 years to life on the attempt count. (Presentence Report ("PSR"), Doc. 16-1, p. 39; Doc. 15, p. 7). Wadlington's sentence range under the United States Sentencing Guidelines ("USSG") was calculated at life based on a Total Offense Level of 46 and Criminal History Category of VI under USSG § 5A (increased from category V pursuant to the career offender guideline in USSG § 4B1.1). (PSR, Doc. 16-1, pp. 30, 39, 46; Doc. 15, pp. 5-7). He was sentenced to life imprisonment on both Counts to be served concurrently on August 5, 1999. *United States v. Wadlington*, Case No. 98-CR-242 (S.D. Iowa);

---

[2] Wadlington was found not guilty of Count 2 for distribution of crack cocaine. (Doc. 15, pp. 3-4).
[3] During the instant habeas proceeding, it was discovered that the conviction in No. 90-cr-1154801 was for mere possession of a controlled substance and *not* for possession with intent to deliver or manufacture, as had been reflected in the § 851 notice. (Doc. 15-5, pp. 1-2). This error has been acknowledged by Respondent herein. (Doc. 24, pp. 2-4; Doc. 36, pp. 3, 6). However, the mistake was not noticed by the sentencing court, the defense, the prosecution, or the Eighth Circuit at any time during the trial, appellate, or post-conviction proceedings.

233 F.3d 1067, 1073 (8th Cir. 2000).

**Appeal and Section 2255 Motion**

Wadlington raised six grounds in his direct appeal to the Eighth Circuit Court of Appeals. *United States v. Wadlington*, 233 F.3d 1067 (8th Cir. 2000). *Wadlington*, 233 F.3d at 1081-82. The Eighth Circuit affirmed Wadlington's conviction and sentence, over a dissent.

In 2005, Wadlington sought relief through a motion under 28 U.S.C. § 2255, arguing that new evidence showed he was actually innocent, and that his indictment ran afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because it failed to specify the drug amount in connection with his charges. *Wadlington v. United States*, 428 F.3d 779, 784 (8th Cir. 2005) (affirming the denial of Wadlington's § 2255 motion). Reviewing for plain error, the Eighth Circuit agreed that Wadlington's sentence on the conspiracy count violated the edicts of *Apprendi*. It also found, however, that Wadlington was not entitled to resentencing because the district court's error did not "seriously affect the fairness, integrity, or public reputation of the judicial proceedings[.]" *Wadlington*, 428 F.3d at 786. Specifically, the court first concluded that "the evidence presented at trial overwhelmingly supported the district court's adoption of the presentence investigation report's conclusion" that the conspiracy offense involved more than 18 kilograms of cocaine. *Wadlington*, 428 F.3d at 785-86. It further concluded that Wadlington was still subject to a life sentence on the attempted-distribution count (based on the then-mandatory sentencing guidelines) and that the sentence would remain unchanged.[4] *Id.*

---

[4] Wadlington asserts that the Eighth Circuit's conclusion on this point was in error because the indictments for both the conspiracy and attempt counts failed to charge the drug amount, and thus, *both* counts suffered from the same flaw under *Apprendi*. (Doc. 48, pp. 3-4, n.3). He argues that his sentences for both counts would have been limited to 30 years had the court recognized the *Apprendi* flaw in the attempt count, therefore, the Eighth Circuit's conclusion that his life sentence on the attempt conviction (under the guidelines) "would remain unchanged" was erroneous. While habeas relief under § 2241 is not available based on *Apprendi*, the *Apprendi* doctrine is a relevant consideration for Wadlington's resentencing.

3

## <u>Applicable Legal Standards</u>

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be employed to raise claims of legal error in conviction or sentencing; they may only challenge the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. *See Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). Additionally, he may not file a "second or successive" § 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, under very limited circumstances, a prisoner may challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998).[5]

---

[5] The Seventh Circuit's interpretation of § 2255(e)'s savings clause is in line with a majority of the Circuit Courts of Appeals' jurisprudence on this issue, including the Eighth Circuit where Wadlington was convicted. *See, e.g., Abdullah v. Hedrick*, 392 F.3d 957, 960-63 (8th Cir. 2004); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997); *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997); *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000); *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001);

A petitioner must meet three conditions in order to trigger the savings clause. First, he must show that he relies on a case of new statutory interpretation rather than a constitutional case. Second, he must show that he relies on a decision that he could not have invoked in his first § 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012). "[T]here must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

## Discussion

In *Mathis*, the United States Supreme Court resolved a split among the circuits as to when a court may consult state charging or sentencing documents (known as the "modified categorical approach") to determine whether a previous conviction under an alternatively-phrased statute may qualify as a career-criminal predicate offense. The *Mathis* Court considered whether an Iowa burglary conviction was properly used to enhance a federal sentence under the Armed Career Criminal Act ("ACCA") and held that only where the elements of the predicate offense match or are narrower than the elements of the "generic" offense (in Mathis' case, generic burglary) may the prior conviction be used as the basis for enhancing a federal sentence. *Mathis*, 136 S. Ct. at 2247. The Iowa statute in question identified several alternative locations where the burglary may take place, including a "building, structure, . . . land, water, or air vehicle." *Id.* at 2250. The court noted that the statute was "indivisible," describing a single crime with several possible modes, or

Martin v. Perez, 319 F.3d 799 (6th Cir. 2003); *Ivy v. Pontesso*, 328 F.3d 1057, 1059-60 (9th Cir. 2003); *see also Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (collecting cases).

"means," of commission, and concluded that because the generic offense of burglary is limited to unlawful entry into a "building or other structure" with intent to commit a crime, the Iowa statute was overbroad. *Mathis*, 136 S. Ct. at 2248, 2250 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). *Mathis* clarified that only if a statute is "divisible" – that is, it sets forth one or more *elements* of the offense in the alternative, each of which amounts to a distinct offense – may the modified categorical analysis be applied to determine which of the alternatives formed the basis for the conviction in question, and whether the elements of that crime match the elements of the generic offense. Thus, if an "indivisible" statute lists alternative factual means to satisfy a single element, and if the alternative means include conduct that sweeps more broadly than the generic crime, then a conviction under the statute may not be used as a career-offender predicate offense, even if the particular defendant's conduct was within the scope of the generic offense. *Mathis*, 136 S. Ct. at 2252 (sentencing court "cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense"); *Van Cannon v. United States*, 890 F.3d 656, 663 (7th Cir. 2018) ("the modified categorical approach has no role to play" if the statute is indivisible).

### Application of the 28 U.S.C. § 2255(e) Savings Clause

As an initial matter, Respondent argues that Wadlington procedurally defaulted on his career-offender challenge by failing to raise it on direct appeal (Doc. 15, pp. 20-23). But procedural default is not an insurmountable hurdle that must be overcome in the context of a § 2241 proceeding based on a claim under § 2255(e). That is because a failure to satisfy the second savings clause requirement – a showing that the § 2241 petitioner was foreclosed from raising his claim through § 2255 – will lead to dismissal of the habeas petition. *See, e.g.*, *Hill v. Werlinger*, 695 F.3d 644, 647 (7th Cir. 2012). *See also Robinson v. Cross*, No. 15-cv-191-DRH-CJP, 2016

WL 826822, at *5 n.1 (S.D. Ill. March 3, 2016) ("Procedural default is not relevant" in the instant § 2241 proceeding); *Cox v. Krueger*, 17-cv-1099, 2017 WL 4706898 at *5 (C.D. Ill. Oct. 19, 2017) (requiring a § 2241 petitioner to have raised challenges to settled law during direct appeal and initial postconviction proceedings would "clog the judicial pipes" and encourage frivolous litigation (quoting *Montana v. Cross*, 829 F.3d 775, 782 (7th Cir. 2016) and finding that petitioner showed "cause and prejudice for any procedural default").

Moreover, a habeas petitioner may overcome procedural default not only by showing cause for the default and actual prejudice, but alternatively with a showing that "failure to consider the defaulted claim will result in a fundamental miscarriage of justice." *Cross v. United States*, 892 F.3d 288, 294-95 (7th Cir. 2018) (quoting *Johnson v. Loftus*, 518 F.3d 453, 455-56 (7th Cir. 2008)). As previously noted, and discussed further below, Wadlington meets this condition. Wadlington's claim also satisfies the first condition as *Mathis* is a statutory-interpretation case. The remaining savings clause requirements warrant detailed analysis.

### *Previous Availability of Petitioner's Mathis Claim*

In two recent opinions, the Seventh Circuit Court of Appeals articulated the test to be applied in evaluating the "prior unavailability" requirement. In *Beason v. Marske*, the court held that a § 2241 petitioner must show it "would have been futile" to raise his argument in his § 2255 motion because the "law was squarely against him." *Beason v. Marske*, 926 F.3d 932, 936 (7th Cir. 2019) (quoting *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015)). Then in *Chazen v. Marske*, without stating which of its various articulations of the test should control going forward, the court concluded that the petitioner satisfied the "prior unavailability" condition because his claim had clearly been foreclosed by the law in his circuit of conviction at the time he might have raised it in a § 2255 motion. *Chazen*, 938 F.3d at 862-63. *See also Light v. Caraway*, 761 F.3d

809, 813 (7th Cir. 2014) (noting that the circuit had "applied two different tests" as to prior unavailability under *Davenport*).

Respondent contends that Wadlington's claim was not previously foreclosed by binding precedent, and that he could have raised a similar argument to that which prevailed in *Mathis*, long before that case was decided in 2016. (Doc. 15, pp. 18-20). Respondent points to similar challenges to predicate offenses that had succeeded in other circuits. (Doc. 15, pp. 18-19, referencing Second, Fifth, and Ninth Circuit opinions). But this argument ignores the relevant question; whether the law *in the circuit of conviction* was against the habeas petitioner. *See Chazen*, 938 F.3d at 862-63; *Prevatte v. Merlak*, 865 F.3d 894, 897 (7th Cir. 2017) (petitioner did not meet the second prong; he could have raised his argument in an earlier proceeding because it was not foreclosed by circuit precedent); *Montana v. Cross*, 829 F.3d 775, 784 (7th Cir. 2016); *Light*, 761 F.3d at 813. Here, the question is whether Wadlington could have raised a *Mathis*-like argument in the Eighth Circuit Court of Appeals.

Citing *United States v. Cornelius*, 931 F.2d 490, 492, 494 (8th Cir. 1991), Wadlington correctly asserts that such an argument was not reasonably available to him in the Eighth Circuit at the time of his direct appeal or his § 2255 motion because courts in the circuit "had expressly approved the practice of applying the modified categorical approach to statutes that set out alternative phrasing" without examining whether the alternatives represented elements of the crime or different means to satisfy a single element. (Doc. 48, pp. 23-24). In *Cornelius*, the Eighth Circuit, in reversing the district court's finding that the state statute under which the defendant had been convicted of breaking and entering was too broad when compared with the *Taylor* definition of generic burglary, held, "if a defendant pleads guilty to a nongeneric burglary statute and the information portion of the charging document includes all of the elements of generic burglary, then

8

the conviction constitutes generic burglary for the purposes of § 924(e)." *Cornelius*, 931 F.2d at 494. This approach continued in the Eighth Circuit until the Supreme Court reversed one of that court's decisions in *Mathis*. *See, United States v. Lamb*, 847 F.3d 923 (8th Cir. 2017) (applying *Mathis* analysis after Supreme Court reversal and remand); *United States v. Thomas*, 124 F.3d 209 (8th Cir. 1997) (table); *United States v. Voshell*, 105 F.3d 663 (8th Cir. 1997) (table) (relying on charging document to find that conviction met generic burglary definition). As such, it would have been futile for Wadlington to raise the challenges herein at the time of his direct appeal and § 2255 motion.

### *Retroactive Application of Mathis on Collateral Review*

The Seventh Circuit recently confirmed the retroactive applicability of *Mathis* in the § 2241 context. *See Chazen v. Markse*, 938 F.3d 851 (7th Cir. Sept. 9, 2019). After discussing the various articulations of the second savings-clause requirement in previous opinions, the court concluded that *Mathis* "fits the bill" as an "intervening case of statutory interpretation [which] opens the door to a previously foreclosed claim." *Chazen*, 938 F.3d at 861-62. Thus, "*Mathis* is 'new' as a functional and practical matter for federal inmates seeking relief from a mandatory minimum sentence under the Act." *Id.* at 862.[6] *Mathis* therefore applies retroactively to a § 2241 petition. *See also Van Cannon v. United States*, 890 F.3d at 663; *Holt v. United States*, 843 F.3d 720, 721– 22 (7th Cir. 2016) ("substantive decisions such as Mathis presumptively apply retroactively on collateral review"). Accordingly, Wadlington's claim satisfies the second *Davenport* condition.

---

[6] The *Chazen* court stopped short, however, of reaching a blanket conclusion that *Mathis* would afford relief in all circumstances to a § 2241 petitioner: "In these circumstances, where the government has conceded that *Mathis* is retroactive and Chazen was so clearly foreclosed by the law of his circuit of conviction at the time of his original § 2255 petition, we conclude that Chazen has done enough to satisfy the savings clause requirements." *Chazen*, 938 F.3d at 863.

Wadlington argues that his enhanced sentences, based on an erroneous application of the career-offender designation, amount to a miscarriage of justice. Because Wadlington's prior drug convictions were deemed to be career-offender predicates, he was given mandatory life sentences under both the statutory scheme of § 841 and the sentencing Guidelines. He contends that if *Mathis* applies to eliminate his two prior Illinois convictions as predicate "felony drug offenses," he would have faced a statutory sentencing range of 10 years to life on Count 1 (conspiracy) instead of mandatory life under 21 U.S.C. § 841, and 5-40 years on Count 7 (attempt). (Doc. 48, p. 8).[7] Similarly, he argues that under *Mathis*, his prior convictions no longer qualify as "controlled substance offenses" under the Sentencing Guidelines.

At the time of Wadlington's conviction for manufacture/delivery of a controlled substance in the 1988 case, the Illinois statute provided, in relevant part:

> [I]t is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog. For purposes of this Section, "controlled substance analog" or "analog" means a substance which is intended for human consumption, other than a controlled substance, that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II, or that was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II.

Ill. Rev. Stat. Ch. 56 1/2, ¶ 1401 (1988) (now codified at 720 ILCS 570/401). Subsections (a) (Class X felony drugs and amounts) and (b) (Class 1 felony drugs and amounts) identify specific controlled substances and amounts, ending with a "catch-all" provision for any other Schedule I or II substance or analog not otherwise listed (¶ 1401(a)(11) and (b)(11)). Wadlington was charged

---

[7] He also argues that if he were to be resentenced, the *Apprendi* error in his statutory sentence which the Eighth Circuit previously found to be harmless in light of the guideline life sentence would no longer be so – and would lower his statutory maximum sentence on the conspiracy count to 20 years instead of life. (Doc. 48, pp. 8-9; Doc. 51, pp. 2-3).

pursuant to subsection (b)(2), under which the manufacture or possession with intent to deliver "more than 1 but not more than 15 grams of any substance containing cocaine, or an analog thereof" constituted a Class 1 felony.

The applicable statute in the 1990 case in which Wadlington was convicted for possession of a controlled substance provided:

> Except as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled or counterfeit substance. Any person who violates this Section with respect to:
> (a) The following controlled or counterfeit substances and amounts, notwithstanding any of the provisions of subsection (c) to the contrary, is guilty of a Class 1 felony and shall, if sentenced to a term of imprisonment, be sentenced as provided in this subsection (a) and fined as provided in subsection (b):
> (1)(A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of a substance containing heroin; . . . .
> (2)(A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of any substance containing cocaine;
> (B) not less than 6 years and not more than 30 years with respect to 100 grams or more but less than 400 grams of any substance containing cocaine; . . . .
> . . . .
> (11) 200 grams or more of any substance containing any substance classified as a narcotic drug in Schedules I or II which is not otherwise included in this subsection.

Ill. Rev. Stat. Ch. 56 1/2, ¶ 1402(a) (1990) (now found at 720 ILCS 570/402(a)).

Subsection (c) provided that a violation involving:

> (c) any other amount of a controlled or counterfeit substance is guilty of a Class 4 felony. The fine for violation of this subsection (c) shall not be more than $15,000.

Ill. Rev. Stat. Ch. 56 1/2, ¶ 1402(c) (1990).[8] Wadlington's 1990 case involved possession of 5.7 grams of a substance containing cocaine. (Doc. 15-5, pp. 1-3). Because the amount was less than the 15-gram minimum in ¶ 1401(a)(2)(A), the catch-all subsection (c) applied to his offense. Ill. Rev. Stat. Ch. 56 1/2, ¶ 1402(c) (1990). He argues the simple possession provision (¶ 1402) and the possession with intent provision (¶ 1401), both of which reference the definitions of controlled

---

[8] Before the amendments which took effect on January 1, 1990, this subpart had been designated as section (b).

substances in ¶¶ 1204-1212, are broader than the federal definition of "felony drug offense."

Wadlington was convicted under 21 U.S.C. § 841(a)(1), which provided:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
> **(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

21 U.S.C. § 841(a)(1) (1999).

The applicable penalty for an § 841 conviction is increased if it follows a prior conviction for a "felony drug offense." The term "felony drug offense" in 21 U.S.C. 841(b)(1) is defined in § 802(44):

> The term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances.

21 U.S.C. § 802(44) (1999).

In August 2018, the Seventh Circuit in *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), applied the categorical analysis enunciated in *Mathis* and *Taylor* and held that an Arizona drug conviction could not qualify as a "felony drug offense" within the meaning of 21 U.S.C. § 802(44) and 21 U.S.C. § 841. The Arizona statute prohibited the possession of "equipment or chemicals, or both, for the purpose of manufacturing a dangerous drug," and referenced a separate code section where "dangerous drug" is defined. *Elder*, 900 F.3d at 503 (quoting Arizona Revised Statutes section 13-3407(A)(3)). Based on the structure of the statute and the separation of the term "dangerous drug" from its definition, the court concluded the statute was indivisible: "'Dangerous drug' is an element of a conviction under section 13-3407(A)(3); the type of dangerous drug is not." *Elder*, 900 F.3d at 503. The court then compared Arizona's definition of "dangerous drug" with the definition of "felony drug offense" in § 802(44) and concluded the

Arizona statute swept more broadly than the federal statute because it included at least two substances (propylhexedrine and scopolamine) that were not covered under the definitions in § 802(44).[9] *Elder*, 900 F.3d at 501. Because the Arizona statute was not divisible, the court held the district court could not employ the "modified categorical approach" and examine documents from the state conviction to determine whether the defendant's actual conduct was within the scope of the federally-defined "felony drug offense." *Elder*, 900 F.3d at 501-03 (citing *Mathis*, 136 S. Ct. at 2248-49, 2252-53, 2256-57).

Re-emphasizing the applicability of the *Mathis* analysis to drug-related offenses, the Seventh Circuit recently scrutinized Illinois' simple possession statute (720 ILCS 570/402 (2016) in *Najera-Rodriguez v. Barr*, 926 F.3d 343 (7th Cir. 2019). It concluded the catch-all provision in § 402(c) is not divisible, and that it includes controlled substances listed in Illinois' definition statute (720 ILCS 570/204(d)) that are not included in the federal schedule of controlled substances. *Najera-Rodriguez* at 347-48. Consequently, the petitioner's 2016 conviction under § 402(c) could not support his removal from the U.S. for a conviction "relating to a controlled substance (as defined in section 802 of title 21)" under 8 U.S.C. § 1227(a)(2)(B)(i). *Id.* at 347. Subsequently, the Seventh Circuit examined the issue of sentence enhancement under 21 U.S.C. §§ 841(b)(1)(A) and 851 and held unequivocally that "Illinois's § 402(c) [like the Arizona statute in *Elder*] is also categorically broader than the federal definition of a felony drug offense." *United States v. De La Torre*, 940 F.3d 938, 949 (7th Cir. 2019). *See also United States v. Garcia & Pineda-Hernandez*, No. 18-1890, 2020 WL 360456, at *2 (7th Cir. Jan. 22, 2020) (Indiana drug statute cannot be a "felony drug offense" because it prohibits manufacture/delivery of salvia,

---

[9] The *Elder* court noted that the drug categories listed in § 802(44) each have their own definitions under federal law: § 802(9) defines "depressant or stimulant substances," § 802(16) defines "marijuana," and § 802(17) defines "narcotic drug." *Elder*, 900 F.3d at 499, n.9. Propylhexedrine and scopolamine did not fit under any of these definitions.

where federal drug definitions do not include this drug).  These cases are instructive in applying *Mathis*' categorical analysis to the Illinois statutes under which Wadlington was convicted, Ill. Rev. Stat. Ch. 56 1/2, ¶ 1401 (1988), and Ill. Rev. Stat. Ch. 56 1/2, ¶ 1402 (1990).

As it was written in 1988, Ill. Rev. Stat. Ch. 56 1/2, ¶ 1401 was structurally similar to the 2016 version of § 402 analyzed in *Najera-Rodriguez*.  Subsection (a) lists 10 different substances in separate paragraphs but prescribes that the penalty for manufacturing/delivery or possession with intent to manufacture/deliver each listed drug in the specified quantity falls under the Class X felony range.  The final paragraph, ¶ 1401(a)(11), is a catch-all, encompassing 200 grams or more of any other controlled substance listed in Schedules I or II that is not otherwise included in subsection (a).  Ill. Rev. Stat. Ch. 56 1/2, ¶ 1401(a) (1988).  Subsection (b) lists smaller quantities of the same substances in separate paragraphs, specifying that a violation involving those drug amounts is punishable as a Class 1 felony.  Ill. Rev. Stat. Ch. 56 1/2, ¶ 1401(b) (1988).  Again, ¶ 1401(b)(11) is a catch-all for 50-200 grams of any substance listed in Schedules I or II which is not otherwise included.  Wadlington's charging and sentencing documents for the 1988 offense referenced ¶ 1401(b)(2).  (Doc. 15-4, pp. 1-2, 5).

In *People v. Manning*, 374 N.E.2d 200 (Ill. 1978), the Illinois Supreme Court held that the simultaneous possession of two drugs, in violation of Ill. Rev. Stat. Ch. 56 1/2, ¶ 1402(a)(5) and (a)(6) (1973), constituted a single offense – not two distinct crimes.  Relying on the Seventh Circuit's consideration of *Manning* in *Najera-Rodriguez*, Wadlington argues that ¶ 1401 is not divisible into separate elements denoting separate crimes.  But the Seventh Circuit concluded that *Manning* is not dispositive with respect to the divisibility of the catch-all possession subsection of 720 ILCS 570/402(c), and this Court need not venture down the rabbit hole.

Regardless of whether the subparts of ¶ 1401(b) are divisible from one another, the Illinois

and federal definitions of cocaine are not a categorical match – therefore invalidating Wadlington's 1988 conviction under ¶ 1401(b)(2) as a predicate offense for sentence enhancement purposes. (Doc. 48, pp. 18-19). Paragraph 1401(b)(2) includes cocaine (in specified amounts) among the controlled substances that constitute a Class 1 felony. Under 21 U.S.C. § 802(44) and § 802(17), cocaine is a narcotic drug, specifically defined as "(D) Cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. § 802(17)(D). The Illinois statute, however, defines cocaine more broadly:

> (4) Coca leaves and any salt, compound, isomer, salt of an isomer, derivative, or preparation of coca leaves including cocaine or ecgonine, and any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine (for the purpose of this paragraph, the term "isomer" includes optical, **positional** and geometric isomers)[.]

Ill. Rev. Stat. Ch. 56 1/2, ¶ 1206(b)(4) (1988) (emphasis added). Because the Illinois definition includes positional isomers and the federal definition does not, the two definitions of cocaine are not a categorical match. As such, ¶ 1401(b)(2) is overbroad.[10]

A plain reading of the 2016 statute at issue in *Najera-Rodriguez* reveals that the substance and structure of § 402 at that time is virtually identical to its predecessor, Ch. 56 1/2, ¶ 1402 (1990), under which Wadlington was charged in 1990 and sentenced in 1991. (Doc. 15-5, p. 2). In 2016, § 402(a) encompassed Class 1 felonies and included nearly 30 separate paragraphs, each naming distinct drugs and amounts with varying ranges of incarceration. Section 402(b) listed fines for violations of § 402(a) which involved 100 grams or more of those listed drugs. The "catch-all" section, § 402(c), provided that a violation "with regard to an amount of a controlled substance

---

[10] The Seventh Circuit reached an analogous conclusion in *U.S. v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019) regarding the discrepancy between the Indiana Controlled Substances Act - "Because the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine, the mismatch renders the Indiana statute overbroad." *Id*

other than methamphetamine or counterfeit substance not set forth in subsection (a) or (d) is . . . a Class 4 felony[,]" and specified a fine of not more than $25,000.  720 ILCS 570/402(c) (2016).

The 1990 version of the statute had an identical structure: ¶ 1402(a) listed specific drug quantities and associated penalties (10 paragraphs at the time); ¶ 1402(b) set forth fines; and ¶ 1402(c) stated that a violation with respect to "any other amount of a controlled or counterfeit substance is . . . a Class 4 felony" and could result in a fine up to $15,000.  Both the 1990 and the 2016 versions of subsection (c) serve as a "catch-all" encompassing any "controlled or counterfeit substance" not specifically listed in the other subsections.[11]

Applying the *Najera-Rodriguez* analysis, this Court concludes that the 1990 version of Ill. Rev. Stat. Ch. 56 1/2, ¶ 1402(c) is indivisible.  For a ¶ 1402(c) offense, which encompasses drugs listed in all of the Schedules (I-V), the drug type does not constitute a distinct element of the crime. Therefore, if the Illinois Schedules in 1990 included one or more substances that fell outside the definition of "felony drug offense" in 21 U.S.C. § 802(44) and related definitional sections, then Wadlington's conviction for simple possession did not qualify as a predicate offense under § 841. *See United States v. Elder*, 900 F.3d 491, 501 (7th Cir. 2018).

Wadlington correctly points out that fenfluramine is contained in the 1990 Schedule IV (¶ 1210(d)(1)), making its possession criminal under both the possession and the manufacture/delivery statutes.  (Doc. 48, p. 15).  But fenfluramine is not a narcotic drug.  *See United States v. Springer*, 354 F.3d 772, 775 (8th Cir. 2004) (fenfluramine is a nonnarcotic controlled substance added to federal Schedule IV in 1973).  Nor does not fall under the definitions of "marihuana" (21 U.S.C. § 802(16)(A)), "anabolic steroid" (21 C.F.R. § 1308.13(f), which lists anabolic steroids in federal Schedule III), or a "depressant or stimulant substance" (21 C.F.R.

---

[11] The 2016 version of § 402(c) included the exclusion for methamphetamine, which was not part of the 1990 version.  This difference does not affect the Court's analysis of the respective versions of the statutes.

§§ 1308.11(e) and (f), 1308.12(d) and (e), 1308.13(b) and (c), 1308.14(c) and (f), 1308.15(d) and (e) – which list stimulants and depressants in federal Schedules I-V). Thus, ¶ 1402(c) swept more broadly than the federal definitions under § 841 because it included a substance that is not a narcotic, marihuana, or a depressant or stimulant substance. *See* 21 U.S.C. § 802(44).

Likewise, the 1990 Illinois drug schedules included salvinorin A and salvia divinorum, the substances that rendered the statute overbroad in *Najera-Rodriguez*. (Doc. 51, p. 5; Doc. 51-1). Accordingly, Wadlington's 1990 possession conviction cannot be considered a "felony drug offense" within the meaning of 21 U.S.C. § 802(44), and thus does not qualify as a predicate offense for the § 841 enhancement.

When Wadlington was sentenced in 1999, the USSG provided:

§ 4B1.1. Career Offender
A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has *at least two* prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

18 U.S.C. § 4B1.1 (1999) (emphasis added). The definition of "controlled substance offense" is found in § 4B1.2(b):

**(b)** The term "controlled substance offense" means an offense under federal or state law, punishable by a term of imprisonment of more than one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

18 U.S.C. § 4B1.2(b) (1999).

The sentencing court applied the career-offender provision in § 4B1.1 to Wadlington's guideline calculation, based on its finding that he had 2 prior "controlled substance offense"

convictions.  As Wadlington points out and Respondent acknowledges, the 1990 conviction for simple possession (correctly understood) does not meet the definition of a "controlled substance offense." If the sentencing court, the parties, and the Eighth Circuit had recognized the error in misconstruing the 1990 conviction as one for possession with intent to distribute, then Wadlington would not have been classified as a career offender under USSG § 4B1.1.  And, as noted above, in light of *Mathis* and *Elder*, Wadlington's 1988 conviction for possession with intent to distribute does not qualify as a "controlled substance offense" because the Illinois cocaine definition is broader than the federal definition.  Consequently, Wadlington was improperly classified as a career offender under the Guidelines.

Respondent correctly asserts that Wadlington's Guidelines sentencing range would have been the same even without the career-offender designation.  The PSR calculated his Offense Level as 46 and his Criminal History Category as V based on the circumstances of his offense and his previous convictions.  The resulting life-sentence guideline was not impacted when the career-offender designation raised his criminal history category to VI.  That said, Respondent's argument, that Wadlington's claim that he was erroneously treated as a career offender under the Guidelines is foreclosed by *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) (no miscarriage of justice when advisory guideline range was incorrectly calculated, so long as sentence was within statutory maximum), fails.  The holding in *Hawkins* applies only where a defendant was sentenced under the post-*Booker* advisory guidelines.[12]  Wadlington was sentenced in 1999 when the Guidelines still had mandatory application.

For a petitioner sentenced under the mandatory guideline scheme, *Narvaez v. U.S.*, 674 F.3d 621 (7th Cir. 2011), remains controlling precedent.  Narvaez obtained habeas relief because

---

[12] *United States v. Booker*, 543 U.S. 220 (2005) (sentencing guidelines are to be advisory only).

his pre-*Booker* 170-month sentence imposed under the career-offender provision exceeded the Guidelines range of 100-125 months that would have applied in the absence of his improperly counted predicate offenses. Even though the 170-month sentence fell within the statutory maximum of 20 years, the court concluded that the period of incarceration exceeded that permitted by law and therefore constituted a miscarriage of justice, entitling him to be resentenced. *Narvaez*, 674 F.3d at 623, 629. The court reasoned that while Narvaez did not have an absolute right to a lower sentence, "he does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him." *Narvaez*, 674 F.3d at 629.

Wadlington's situation is analogous; as a result of the application of *Mathis*, he can no longer be considered a career offender. His pre-*Booker* life sentence on the attempt count exceeds the 40-year maximum sentence permitted by law for a non-career offender, and as such, presents a miscarriage of justice. *See* 21 U.S.C. § 841(b)(1)(B). On the conspiracy count, Wadlington remains eligible for a life sentence under the non-enhanced statutory range of 10 years – life, and under the Guidelines range. But without the career-offender enhancement, the sentencing court's discretion is no longer constrained by the mandatory-minimum life sentence under 21 U.S.C. § 841(b)(1)(A). Because the mandatory minimum sentence should have been only 10 years, the mandatory life sentence on this Count also amounts to a miscarriage of justice, and Wadlington is entitled to be resentenced free of the career-offender designation.

In that vein, the Court finds Wadlington's argument in favor of resentencing proceeding in this district persuasive. (Doc. 51, pp. 6-10). Respondent concedes that 28 U.S.C. § 2243 grants the habeas court broad authority to "dispose of the matter as law and justice require," but argues the district of conviction is better suited to apply the statutory sentencing factors under 18 U.S.C. § 3553(a). However, that consideration is outweighed by the risk of inviting the "knotty problems"

that may well ensue where the habeas court sits in a different appellate district from that of the original sentencing court.  *See Webster v. Daniels*, 784 F.3d 1123, 1145 (7th Cir. 2015).  p. 8-9).  Thus, in the interests of justice, this Court will resentence Wadlington as set forth below.

**Sentencing Parameters**

The drug quantity associated with Wadlington's offenses was not charged in his indictment, nor did the jury make a finding beyond a reasonable doubt of the quantity of drugs for which he was responsible.  Instead, Wadlington's statutory sentencing range was increased based on the judge's factual finding of the drug amount attributed to him, as calculated in the PSR.

Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases a defendant's penalty beyond the prescribed statutory maximum, other than the fact of a prior conviction, must have been charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt.  Similarly, *Alleyne v. United States*, 570 U.S. 99, 103 (2013), requires that any fact that would increase the mandatory minimum sentence must be found by the jury beyond a reasonable doubt.  Following *Apprendi* and *Alleyne*, an enhanced sentencing range cannot rest on the judge's factual finding of drug quantity.  And, a review of the record in Wadlington's case reveals that the jury was never asked to determine the specific drug quantity involved in his offenses.

This Court has concluded that Wadlington is entitled to habeas corpus relief and will therefore vacate his life sentences and resentence him consistent with *Apprendi* and *Alleyne.*  The jury in Wadlington's case found that his offenses involved some unspecified amount of cocaine and cocaine base.  Under 21 U.S.C. § 841(b)(1)(C) (1999), a conviction for a Schedule I or II controlled substance in an amount other than the quantities set forth in the other statutory subsections carries a maximum sentence of 20 years.  As such, the maximum sentence Wadlington faces on each count of conviction is 20 years.  The Government suggests that even if the *Apprendi*

20

rule is applied, Wadlington's statutory sentencing range would still be up to 40 years. (Doc. 54, p. 2). But the Government's position presumes stacking of the 20-year statutory maximum for Counts 1 and 7, and the imposition of consecutive sentences is neither statutorily mandated nor warranted under 18 U.S.C. § 3553(a).

Wadlington's incarceration began on February 12, 1999. *United States v. Wadlington*, Case No. 98-CR-242 (S.D. Iowa) (Doc. 521; transcript indicating Wadlington was committed to the custody of the U.S. Marshal). He has therefore served more than 21 years in prison without consideration of any good conduct credit to which he may be entitled.

## Disposition

Wadlington's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Docs. 1, 35) is **GRANTED** and the following relief is **ORDERED**:

1. The career-offender-enhanced life sentences for Count 1 and Count 7 imposed upon Euka Wadlington by the United States District Court for the Southern District of Iowa in *United States v. Wadlington*, Case No. 98-cr-242 are **VACATED**.

2. Wadlington's sentence of incarceration in *United States v. Wadlington*, Case No. 98-cr-242 (S.D. Iowa) is **REDUCED** to 240 months on Count 1 and 240 months on Count 7, to be served concurrently. Wadlington's term of supervised release is **REDUCED** to 3 years on each Count, to be served concurrently. In all other respects, the Judgment of the United States District Court for the Southern District of Iowa entered on August 5, 1999 remains in effect.

3. Euka Wadlington, BOP No. 10296-424, shall be **IMMEDIATELY RELEASED** from the custody of the Bureau of Prisons, subject to the terms and conditions of supervised release ordered by the Southern District of Iowa in Case No. 98-cr-242.

4. The Clerk of Court is **DIRECTED** to enter judgment in favor of Wadlington.

5. The Clerk of Court is **DIRECTED** to furnish certified copies of this Order to the Bureau of Prisons, the Warden of FCI-Greenville, Illinois, the United States Attorney for the Southern District of Iowa, the Federal Public Defender for the

Southern District of Iowa, and the Clerk of the District court for the Southern District of Iowa for filing in Case No. 98-cr-242.

**IT IS SO ORDERED.**

**DATED:  April 7, 2020**


_s/ Staci M. Yandle_
**STACI M. YANDLE**
**United States District Judge**